UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE-OPELOUSAS DIVISION

| | |
|---|---|
| **ROBERT KEITH HEINEN, THOMAS AND CASSEDY FARMS, JOHN JOSEPH CARBALAN, BLANE FREY** | CIVIL ACTION NO: 6:23-cv-00873 |
| **VERSUS** | DISTRICT COURT JUDGE |
| **RICETEC INC., SYNGENTA SEEDS, LLC, AND ADAMA LTD.** | MAG. JUDGE |

**PETITION FOR DAMAGES AND CLASS CERTIFICATION**

The complaint of Robert Keith Heinen, Thomas and Cassedy Farms, John Joseph Carbalan, Blane Frey, and all persons of the age of majority who are Louisiana residents, individually and on behalf of others similarly situated, herein represented by undersigned counsel represent the following:

1.

Made Defendants herein are:

1) RiceTec, Inc., a foreign corporation domiciled in the State of Delaware which is doing business in the State of Louisiana;

2) Syngenta Seeds, LLC., a foreign corporation domiciled in the State of Delaware which is doing business in the State of Louisiana;

3) Adama Ltd., a foreign limited liability partnership domiciled in the State of Texas, which is doing business in the State of Louisiana and is also part of the Syngenta Group;

Defendants are truly indebted to the complainants in an amount commensurate with the damages sustained for the following, to wit:

2.

Defendants are entities engaged in the farming industry and have either manufactured and/or sold rice seeds to the Plaintiffs such that the Defendants have purposefully and intentionally engaged in business pursuits within the State of Louisiana by their sales transactions with Plaintiffs, or with distributors of rice seed from who the Plaintiffs purchased rice seed, all such rice intended for commercial production within the State of Louisiana.

3.

Defendants advertised and promoted their product a rice variety called RiceTec MAX-ACE ("MAX-ACE"), on a national and international level such that Defendants knew or should have known that their product(s) would, through the stream of commerce, be sold and planted in the State of Louisiana. Defendants thus either i) transacted business in the State of Louisiana, and/or ii) contracted to supply a product within the State of Louisiana, and/or iii) manufactured a product, i.e. the rice, which caused damage or injury in the State of Louisiana, while at the time of placing the rice in the stream of commerce the Defendants could have foreseen, expected, realized, and anticipated that the rice would eventually be found in the state of Louisiana by reason of its nature, the Defendants' marketing practices, and the fact that the State of Louisiana is a globally known and prominent agricultural center for rice production, all of which provides the Louisiana courts with *inpersonam* jurisdiction over the Defendants in conformance with the constitutional principles of due process.

4.

Robert Keith Heinen is a rice farmer who planted 700 acres of MAX-RICE in Acadia Parish, State of Louisiana.

5.

Thomas and Cassedy Farms is a rice farmer who planted 644 acres of MAX-RICE in Acadia Parish, State of Louisiana

6.

John Joseph Carbalan is a rice farmer who planted 101 acres of MAX-RICE in Jefferson Davis Parish, State of Louisiana.

7.

Blane Frey is a rice farmer who planted 240.35 acres of MAX-RICE in St. Landry Parish, State of Louisiana.

8.

The MAX-RICE was advertised by Defendants to be a high yield rice which would be disease resistant and have a high-volume yield of commercially viable and merchantable rice.

9.

Plaintiffs planted the RiceTec MAX-ACE based upon the Defendants' representations of increased productivity and resistance to herbicides which are used in the commercial production of rice such that Plaintiffs acres were supposed to yield superior harvests of rice for commercial sale.

10.

As the rice began to mature, in its fourth and fifth month of growing, the rice seeds began to sprout while the plants were maturing toward an ideal harvest time, and the

premature germination of the rice seeds contained at the top of the stalks of the rice caused a large portion of the rice plants to fall over on the ground rather than continue to stand straight up, which is the position for a proper and normal harvest.

11.

The rice plants which fell over were not in a proper configuration or position for further maturation and growing, or in a proper configuration or position for harvesting as should be present for a normal and commercially viable rice harvest.

12.

Plaintiffs were able to harvest some of the mature rice for the commercial market, but upon delivery to the normal and usual rice mills/wholesalers said rice was rejected due to poor quality and the defective characteristics of:

1) the harvested RiceTec MAX-ACE was incapable of being milled, which is an absolute necessity for commercially harvested rice;

2) the harvested RiceTec MAX-ACE had germinated prematurely and was unfit for milling, storage, or any possibility for consumption by humans or for animal feed: or any other possible commercial use; and

3) the MAX-RICE was worthless and non-merchantable.

13.

The Defendants, in developing, manufacturing and or distributing their product called MAX-RICE were negligent and/or strictly liable in one or more of the following non-exclusive particulars contained in the Louisiana Products Liability Act, La. R.S. 9:2800.51 et seq. to wit:

1) Manufacturing a product which was unreasonably dangerous in construction and composition in that at the time the product left its manufacturer's control, the product

   deviated in a material way from the manufacturer's specifications or performance standards of the product, or from otherwise identical products manufactured by the same manufacturer;

2) Manufacturing a product which was unreasonably dangerous in design because at the time the product left the manufacturer's control there existed an alternative design for the product that was capable of preventing the Petitioners, damages and the likelihood that the product's design would cause Petitioner's damages and the gravity of that damage outweighed the burden on the manufacturer to adopt the alternative design on the utility of the product;

3) Manufacturing a product which was unreasonable dangerous because it did not conform to the express warranty made at the time by the manufacturer about the product and the Petitioner was induced to use the product and the Petitioner's damages are proximately caused because the express warranty was untrue; and

4) Manufacturing a product which was unreasonably dangerous because the manufacturer did not provide adequate warning about the product at the time the product left the manufacturer's control, the product possessed the characteristic that could cause damage and the manufacturer failed to use reasonable care to provide an adequate warning of such characteristics and its danger to users and handlers of the product;

Defendants failed to properly and/or prudently test, and research the growth/harvest cycle of the MAX-RICE, to ensure that said product would grow and thrive in the naturally occurring weather, climate, and soil conditions of South Louisiana where the Defendants knew or should have known that significant amounts of MAX-RICE had been sold and distributed for the purpose of commercial planting throughout Louisiana.

14.

RiceTec MAX-ACE was a defective product when it was sold on the

commercial market to the Plaintiffs because it failed to properly grow, prematurely germinated its rice seeds while the plant was still growing and before harvesting, large portions of the growing rice plants fell over and could not be properly harvested, and the limited amount of rice that could be harvested was not fit for consumption and not commercially viable in the rice marketplace.

15.

The Defendants sold and distributed the RiceTec MAX-ACE knowing of its redhibitory defects, or should have known of RiceTec MAX-ACE's redhibitory defects, and Plaintiffs are entitled to all damages allowed pursuant to 9:2800.51 et seq. as well as LSA-R.S. C.C. art. 2520 et seq.

16.

Alternatively, if any Defendant was not a manufacturer but participated in the testing, promotion, sales, and/or distribution of the MAX-RICE, said Defendants' conduct was negligent, unreasonable and below the reasonable standard of care by allowing an inherently and defective product to enter the stream of commerce with hidden defective characteristics which were only discovered by the Plaintiffs once those undesirable and defective characteristics, as set forth above, became visible as the rice matured, but such undesirable and defective characteristics were known to the Defendants or should have been known to the Defendants through the exercise of ordinary care in their respective businesses and professions.

17.

The negligence, fault, and/or strict liability of the Defendants has caused the

damages alleged herein to the Plaintiffs, and such negligence, fault, and/or strict liability occurred either individually by each Defendant's conduct, or in concert or collectively.

18.

Plaintiffs have been damaged by the defective rice sold to them in the following manner:

1) Plaintiffs have invested significant monies in labor, machinery, and time and fuel, and have gone into debt in attempting to bring in a crop of RiceTec MAX-ACE, and due to no inaction, fault or otherwise improper conduct on the part of the Plaintiffs, the entire RiceTec MAX- ACE crop is a failure, commercially nonviable and worthless such that Plaintiffs have lost their entire investment in their 2022 RiceTec MAX-ACE crop and will be responsible for interest and other economic costs and charges for longer periods of time than otherwise would have been applicable but for the failure of the RiceTec MAX-ACE crop;

2) Plaintiffs have lost all value that was supposed to have been generated by the sale of the 2022 RiceTec MAX-ACE crop because of the damage done to the product itself, i.e., the RiceTec MAX-ACE crop, which product is now worthless;

3) Plaintiffs will have to retrieve and remove the thousands of tons of defective and worthless rice grain and plants from their fields at tremendous cost;

4) Plaintiffs will have to pay for the retrieval of the rice that was delivered to milling companies which rice is now worthless and dispose of said rice at tremendous expense and cost to the Plaintiffs.

5) Plaintiffs will have future losses due to this crop causing regrowth, cross pollinating, also known as volunteer rice, which damages future yields causing a non-marketability, or a decrease in price for future crops grown on that land.

6) Plaintiffs will suffer damage to the land making it non-plantable.

19.

Plaintiffs are entitled to all economic losses and damages incurred due to the defective rice manufactured and/or sold by the Defendants, which damages has been listed above in non-exclusive means, as well as attorney fees for recovery under the law of redhibition due to the economic damages listed above and damages to the rice itself as a result of the defective, nonmarketable, and worthless rice product that was manufactured and or sold by the Defendants.

20.

Plaintiffs' claims herein are individually more than the amount jurisdictionally necessary for a jury trial, and also in excess of $75,000.00, exclusive of interest and costs.

**CLASS ACTION**

21.

Plaintiffs pray that this matter be certified and maintained as a class action on behalf of all past and present farmers or rice customers who purchased, planted, farmed, harvested, or brought to market the RiceTec MAX- ACE product manufactured, sold, advertised or distributed by defendants.

22.

Plaintiffs represent that the class consists of numerous farmers or rice customers who are located throughout the State of Louisiana and the United States, so that joinder of all members is impractical.

23.

Plaintiffs represent that the questions of law and fact are common to the class which include the following, to-wit:

    i.    Is RiceTec MAX-ACE an unreasonably dangerous or defective product in violation of Louisiana Products Liability Act, La. R.S. 9:2800.51 *et seq.*?

    ii.    Did the Defendants, develop, manufacture, or distribute RiceTec MAX-ACE in violation of Louisiana Products Liability Act, La. R.S. 9:2800.51 *et seq.*?

    iii.    Does RiceTec MAX-ACE contain redhibitory defects in violation of LSA-R.S. C.C. art. 2520 *et seq.*?

    iv.    Did the Defendants sell and distribute RiceTec MAX-ACE knowing of its redhibitory defects, or should have known of RiceTec MAX-ACE's redhibitory defects, LSA-R.S. C.C. art. 2520 *et seq.*?

    v.    If the Defendant was not a manufacturer but participated in the testing, promotion, sales, and/or distribution of the RiceTec MAX-ACE was Defendants' conduct negligent, unreasonable and below the reasonable standard of care by allowing an inherently and defective product to enter the stream of commerce?

24.

Plaintiffs represent that the claims and defenses of the representative parties are typical of the claims or defenses of the class.

25.

Plaintiffs represent that while the injury/damage may vary, the measure of injury is uniform, i.e., the value of the lost rice crop, along with the costs of retrieval of any rice delivered to milling companies, disposal of the rice and remediation/replanting of a new rice crop, along with any statutory penalties or attorney's fees allowed by law.

26.

Plaintiffs represent that the damages can be determined on a class wide basis by using standardized values for the lost rice crop, (i.e. a per acre value) along with the costs of retrieval of any rice delivered to milling companies (i.e. a value based upon the weight of the crop delivered), along with similar standard values for the disposal of the rice and remediation/replanting of a new rice crop (i.e. also based upon weight and per acre values).

27.

Plaintiffs are members of the class they seek to represent, and their interests coincide with, and are not antagonistic to the other class members. Plaintiffs are a representative party and will fairly and adequately protect the interest of the class.

28.

Plaintiffs represent that the class is or may be defined objectively in the terms of ascertainable data such that the Court may determine the constituency of the class for purposes of the conclusiveness of any judgment that may be rendered in the case.

29.

Plaintiffs further represent that the prosecution of separate actions by or against individuals of the class would create a risk of inconsistent or varying adjudications with respect to individual members and would establish incompatible standards of conduct for the party opposing the class.

30.

Plaintiffs represent that the class action is superior to all other available methods for the fair and efficient adjudication of this controversy.

31.

Plaintiffs pray for a trial by jury.

**WHEREFORE,** Plaintiffs, Robert Keith Heinen, Thomas and Casssedy Farms, John Joseph Carbalan, and Blane Frey, individually and on behalf of others that are similarly situated, pray that the Defendants be duly cited to appear and answer this petition, and that after all legal delays and due proceedings had, there by judgment herein in favor of Plaintiffs, and against Defendants, **RICETEC, INC., SYNGENTA SEEDS, LLC, and ADAMA, LTD.** individually, jointly and *in solido,* for their damages, with legal interest thereon from date of judicial demand until paid, for all attorneys fees as allowed by law and judicial interest thereon, and for all costs of these proceedings. Plaintiffs further pray for all necessary orders and decrees and for full, general and equitable relief.

[SIGNATURES ON NEXT PAGE]

BY THEIR ATTORNEYS,

/s/ Stephen R. Barry

STEPHEN R. BARRY (21465)
Barry Rome & Scott
612 Gravier Street
New Orleans, LA 70130
Telephone:   504-525-5553
Facsimile:   504-525-1909
sbarry@barryrome.com

and

BARRY A. ROACH (21838)
LARRY A. ROACH, INC.
2917 Ryan Street
Lake Charles, Louisiana 70601
Telephone:   337-433-8504
Facsimile:   337-433-3196
broach@larryaroachinc.com

and

BRETT A. STEFANSKI (24222)
SCOTT STERFANSKI (21895)
Edwards Stefanski-Zaunbrecher, LLP 125
P.O. Drawer 730
Crowley, LA 70527
Telephone:   337- 783-7000
Facsimile:   337-783-3165
bstefanski@eszlawfirm.com
sastefanski@eszlawfirm.com

PLEASE ISSUE SUMMONS FOR SERVICE AS FOLLOWS:

1. RiceTec, Inc.
   Through its Registered Agent
   The Corporation Company
   Corporation Trust Center 1209 Orange Street
   Wilmington, DE 19801

   [continued on next page]

2. Syngenta Seeds, LLC
   Through its Registered Agent
   The Corporation Trust Company
   Corporation Trust Center 1209 Orange Street
   Wilmington, DE 19801

3. Adama Ltd.
   Through its Registered Agent
   Shula Netzer
   16950 Dallas Pkwy, Suite 120
   Dallas, TX 75248